**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ZELMA WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 06 C 2105 |
| v. | ) |
| CARS COLLISION CENTER, LLC, | ) JUDGE DAVID H. COAR |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Zelma Williams ("Plaintiff") is suing her former employer, Cars Collision Center, LLC ("Defendant"), for disability, age and gender discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 12101 *et seq.* Now before this court is Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

**I.  STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252. *See also Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

## II.     RELEVANT FACTS

**Undisputed Facts**

Plaintiff was a manager of a body shop located in Schaumburg, Illinois when a company named AutoNation purchased it. Upon purchasing the body shop, AutoNation promoted Plaintiff to the position of director. Plaintiff worked for AutoNation for approximately eight and one-half years. In September of 2003, Defendant purchased the body shop from AutoNation. Williams' employment at the body shop ended when AutoNation sold the facility to the Defendant. Plaintiff earned approximately $120,000 per year in total compensation at the time of her termination. Throughout her employment with AutoNation and the Defendant, Plaintiff was a right hand dominant individual who had lost her right arm below the elbow. However, her impairment never prevented her from performing any of her work duties.

Defendant offered thirty day temporary positions at the Schaumburg facility to seventeen of the former AutoNation employees, including the Plaintiff, who were terminated upon its acquisition of the body shop. This employment was characterized by Defendant as "contract

work" on a temporary basis. Plaintiff accepted that offer of temporary contract work. Eleven of the seventeen former AutoNation employees who were offered temporary contract work were eventually hired after a thirty day retention period. Joanne Lazarsky was the only other female former AutoNation employee other than the Defendant out of the seventeen. She was hired as a permanent employee by the Defendant. She is also four months older than the Defendant. Norman Hamrey was another former AutoNation employee hired on a temporary basis and ultimately hired as a permanent employee by Defendant. He is three years and two months older than the Plaintiff. James Schloderback was yet another former AutoNation employee hired on a temporary basis and ultimately hired as a permanent employee. He is nearly the exact same age as the Plaintiff. Bruno Streich, Steve Johnson and Mike Conway were former AutoNation employees initially hired on a temporary basis, but ultimately passed over as permanent employees by Defendant. Streich, Johnson and Conway are approximately three, forty and ten years younger than the Plaintiff respectively.

After the first two weeks of her temporary retention, Plaintiff attended a seven hour training program at the Defendant's call center in Indiana where she received supervision from Shelly Bernhardt. The training at the call center did not involve any hands-on participation. The remainder of the Plaintiff's temporary retention was spent at the Defendant's facility in Naperville, Illinois, where Joe Hoffman ostensibly was a trainer.[1] Hoffman trained Williams on entering payroll data and allowed her to perform this task while at the Naperville facility. During one training session involving a demonstration of the computer system, Plaintiff requested a desk to sit at while taking notes. Hoffman offered her a seat at a desk. Plaintiff

---

[1] Plaintiff denies that Hoffman trained her, alleging instead that he ignored her.

could not see the computer screen from her seat at the desk. Hoffman offered to send her Mazzone's notes from an earlier training session. Plaintiff received those notes via fax. She did not request any other accommodations from Defendant or any other employer.

At some point, Hoffman asked her how she lost her arm and how long she had lived without it. While observing the Plaintiff inputting payroll data into a computer, Hoffman laughed and said that even with one arm, she did it six times faster than Mazzone. He also mentioned to the Plaintiff that most of the Defendant's managers were men. In October 2003, Defendant had four women employed as managers. Plaintiff personally knew of only one female manager. No employee of the Defendant's ever stated to Plaintiff that her condition was considered a disability. Furthermore, neither Hoffman or any other of the Defendant's employees made any other remarks to the Plaintiff about her arm, gender or age.

At the conclusion of the thirty day retention period, Defendant decided not to hire Plaintiff as a permanent employee. Amy Mieding, Defendant's human resources manager, met with Plaintiff personally to convey Defendant's decision. The decision not to hire Plaintiff was based on the recommendation of Defendant's regional sales manager, Todd O'Day, who had responsibility for the final decision. Plaintiff was informed that the decision was to not hire her was based on a difference in management philosophy and style of the Plaintiff and the Defendant. However, Defendant never discussed philosophy and style with the Plaintiff. Defendant provided Plaintiff, as well as other former AutoNation employees, with a form letter memorializing Defendant's decision not to hire.

In October of 2003, Tom Mazzone was hired as the manager of the body shop, now known as the Cars Collision Woodfield facility. Defendant transferred Mazzone from one of its

existing facilities in Oak lawn, Illinois, where he had been the manager. Mazzone was trained for the managerial position by Hoffman. O'Day was one of his supervisors at the Oak Lawn facility. Mazzone did not receive any staff or customer complaints while he managed the Oak Lawn facility. At the time of his transfer to the Woodfield facility, Mazzone's salary was $65,000 per year. Mazzone is eight and one-half years younger than the Plaintiff. At one time the Plaintiff expressed a desire to be trained by Mazzone. Mazzone was the general manager of the Woodfield facility from October 2003 until July 2004, at which time Richard Satzke was promoted to replace Mazzone. Satzke was yet another former AutoNation employee hired on a temporary basis, as was the Plaintiff, but ultimately hired as a permanent employee.

**Disputed Facts**

The Defendant offers evidence in the form of affidavits that the Plaintiff was not attentive in training and berated a co-worker in the presence of customers. Todd O'Day stated in an affidavit that he personally saw and heard the Plaintiff berate a co-worker, Satzke, at the Woodfield facility in front of customers. He also states that it appeared the Plaintiff was angry that Satzke had not returned a phone call and refused to listen to his explanation. The Plaintiff responds that this incident never occurred. In addition to her own affidavit, the Plaintiff offers an affidavit of Joanne Lazarsky that does not state whether O'Day was present or not, but does state that the Plaintiff was merely diffusing a heated argument between Satzke and Lazarsky through polite admonishment. The Defendant sent a letter, signed by Amy Meiding, to the Illinois Department of Human Rights (IDHR) regarding charges the Plaintiff brought to that agency's attention. In that letter, Mieding wrote that Shelly Bernhard witnessed the incident

between Satzke and the Plaintiff. There was no mention of O'Day witnessing the Plaintiff berating anyone.

## III. ANALYSIS

### A. Disability Discrimination

Plaintiff attempts to prove her claim of disability discrimination under the ADA (as well as her claims of gender and age discrimination under Title VII and the ADEA, respectively) indirectly under the *McDonnell Douglas* burden-shifting method, which of course she is entitled to do. *See Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997). In order to satisfy the initial burden of proof under the *McDonnell Douglas* schema, a plaintiff must provide evidence that "(1) she is disabled within the meaning of the ADA, (2) her work performance met her employer's legitimate expectations, (3) she was [subjected to an adverse employment action], and (4) the circumstances surrounding her [adverse employment action] indicate that it is more likely than not that her disability was the reason for these adverse actions." *Leffel v. Valley Fin. Serv.*, 113 F.3d 787, 794 (7th Cir. 1997).

Under the ADA, the term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff does not have an arm below her right elbow. She has had this impairment throughout her employment with the Defendant and her previous employer, AutoNation. She claims her missing forearm and extremity easily qualify her as disabled within the meaning of the ADA. However, the Defendant disputes the Plaintiff's status as disabled under the statute

because 1) she admitted that her impairment has never prevented her from performing any work duties, and 2) she can perform several life functions such as cooking and grooming herself.

There is no doubt that the absence of her right hand and forearm only establish that the Plaintiff is the victim of a physical impairment, nothing more. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194-95 (2002). Under the ADA, a plaintiff must also demonstrate that his impairment substantially limits one or more of his major life activities. *See id.*; *see also* 42 U.S.C. § 12102(2). The Supreme Court and the Seventh Circuit have referred to major life activities of central importance to most people's daily lives contained in the Code of Federal Regulation as well as offering other examples. *Bragdon v. Abbott*, 524 U.S. 624, 639 (1998); *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006). Those activities include caring for oneself, walking, hearing, learning, eating, sleeping, speaking, breathing, engaging in sexual reproduction, performing manual tasks and working. *Bragdon,* 524 U.S. at 639; *Scheerer*, 443 F.3d at 919; 45 C.F.R. § 84.3(j)(2)(ii); 28 C.F.R. § 41.31(b)(2).

Plaintiff testified at her deposition that she has mastered day-to-day life activities such as brushing her teeth, combing her hair and putting on her shoes. She also testified that she lives alone and does not require assistance in cooking or clothing or feeding herself. She also stated that there was never anything that kept her from doing her job, presenting herself in a professional manner or going to work every day. However, she also stated that she had to give up certain leisure activities that she engaged in before her amputation, including golf and tennis. Regarding work, she stated that she cannot do certain things like take notes while holding a pad or climb a ladder.

This Court finds that Plaintiff has not presented evidence sufficient for a reasonable jury to conclude that she was disabled. Plaintiff has not offered any evidence demonstrating that her impairment has in any way impacted her ability to walk, hear, learn, eat, sleep, breath or reproduce. She unequivocally stated that there was never anything that kept her from doing her job, presenting herself in a professional manner or going to work every day. As for caring for herself, she testified that she lives alone, does not require assistance in cooking or clothing or feeding herself and that she has mastered day-to-day life activities such as brushing her teeth, combing her hair and putting on her shoes. That leaves one category of activity- performing manual tasks.

The Supreme Court has explained that in order to show substantial limitation in the performance of manual tasks due to an impairment, an individual must show the impairment "*prevents or severely restricts* the individual from doing activities that are of central importance to most people's daily lives" and that "the impairment's impact must also be permanent or long term." *Williams*, 534 U.S. at 198 (emphasis added). Despite the great advances in science and biotechnology, the impact of a missing hand and forearm easily qualifies as permanent or long term. However, the Plaintiff has provided through her own deposition testimony overwhelming evidence that she is not prevented or severely restricted from doing activities that are of central importance to most people's daily lives, which include household chores, bathing oneself and brushing one's teeth.

On the one hand, Plaintiff stated that she *can not* play golf, tennis or the piano; or hold a pad and take notes simultaneously. She stated that she *does not* paint her house when its necessary or do gardening; climb ladders and change lightbulbs, cut her own hair or any activity

that usually requires two hands. She also stated that it is difficult for her to drive long distances. On the other hand, she stated that she cooks for herself; clothes and feeds herself; brushes her own teeth, puts on her shoes and combs her own her. She also stated that she lives alone, does not require assistance in executing her daily activities and has learned to live a normal life. Plaintiff's ambiguous statement that she does not perform activities that usually require two hands is much too general and amorphous to satisfy her burden of proof because it does not identify what activities are 1) daily tasks of central importance to most people's lives and 2) not capable of being executed without both hands. A plaintiff must present specific facts establishing a genuine issue of material fact as to whether he is substantially limited in a major life activity in order to survive a summary judgment motion. *Scheerer*, 443 F.3d at 919 (involving disability discrimination claim under the Rehabilitation Act, not the ADA, but noting that the analysis is the same under either statute). The only reasonable conclusion one can draw from these facts is that the Plaintiff is not prevented or severely restricted in performing the variety of tasks that are of central importance to most people's daily lives.

In *Holt v. Grand Lake Mental Health Center, Inc.*, for example, the ADA claimant presented evidence that she could not cut her own nails and that she required assistance in chopping, cutting, and slicing food and buttoning her own clothes. 443 F.3d 762, 767 (10th Cir. 2006). That Court held that such evidence was insufficient to demonstrate that the claimant could not perform a variety of manual tasks. *Id.* Here, the Plaintiff's evidence on the impact of her impairment is even less indicative of substantial limitation.

Therefore, this Court finds that despite her obvious impairment, Plaintiff is not disabled within the meaning of the ADA because she has not offered any evidence from which a

reasonable factfinder could conclude she is prevented or severely restricted in performing the variety of tasks that are of central importance to most people's daily lives. She also failed to produce evidence that the Defendant perceived her to be disabled within the meaning of that term in the statute. Having failed to satisfy the first requirement of the *prima facie* claim, there is no need to proceed to the other requirements. The Defendant is entitled to summary judgment on Count I of the Complaint. Summary judgment is clearly available and appropriate in cases such as these where the plaintiff has failed to submit sufficient evidence to create a genuine issue of material fact. *See e.g. Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944 (7th Cir. 2000).

*Failure to Accommodate*

A failure to accommodate claim cannot proceed where the court has found that the claimant was not disabled within the meaning of the ADA. *Cassimy v. Bd. of Educ. of Rockford Public Schools, Dist. #??205*, 461 F.3d 932, 935-36 (7th Cir. 2006) (citation omitted). Therefore, this Court finds that Plaintiff has failed to present a genuine issue of material fact regarding her failure to accommodate claim. However, it may be worth mentioning that this Court would have reached the same conclusion regarding Plaintiff's failure to accommodate claim even had the disability claim proceeded. It is well-established that an employer need only provide a qualified individual with a reasonable accommodation, not the accommodation she would prefer. *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000) (citations omitted). Plaintiff concedes facts that clearly show the Defendant reasonably accommodated her impairment.

The basis of the Plaintiff's claim is that she requested her training supervisor, Hoffman, to accommodate her impairment by allowing her to sit while taking notes during a training

session involving watching a computer screen.² She concedes that Hoffman allowed her to sit at a desk but claims she could not see the computer screen that was the subject of the training. The Plaintiff also concedes that Hoffman offered to send her the notes for that training session as a substitute for her taking notes and that she received those notes. Therefore, on these facts as presented by the Plaintiff, she has not (nor can she) present evidence that her employer failed to provide her with a reasonable accommodation for her inability to take notes due to her impairment.

**B. Age Discrimination**

A plaintiff must prove that she was the victim of an adverse employment action due to her age to state a claim under the ADEA. *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 400 (7th Cir. 1992) (citation omitted). A plaintiff need only show that age was a determining factor, not the only factor in the employer's decision to commit the adverse employment action. *Id*. A plaintiff may prove her case through the submission of direct evidence or circumstantial evidence. *Id*. In her complaint, the Plaintiff merely pleaded that she was born on May 14, 1946 and was over forty years of age at all times material to the cause of action; that she met or exceeded all of the Defendant's legitimate job expectations; and that actions of the Defendant constituted discrimination in employment based on age. In her Responses to Defendant's Motion for Summary Judgment and Statement of Material Facts, the Plaintiff has presented facts that support her allegations. However, those facts are insufficient for her to withstand a motion for summary judgment.

---

² Though not material to the disposition of this motion, it is unclear that taking notes was a necessary function of the Plaintiff's job or how the lack of an arm prevented her from standing and observing a computer screen.

Plaintiff has attempted to prove her *prima facie* claim of age discrimination under the familiar *McDonnell Douglas* framework. In the context of an ADEA claim, the plaintiff must show that (1) she is a member of the protected class; (2) that she was performing at a satisfactory level; (3) that she was subject to an adverse employment action; and (4) that she was treated less favorably than substantially younger, similarly situated employees. *Schuster*, 327 F.3d at 574; *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000). A member of the protected class under the ADEA are employees over forty years of age. *Schuster*, 327 F.3d at 574; *see* 29 U.S.C. § 631(a).

Plaintiff satisfies the first requirement of a *prima facie* claim because she was over forty years of age at all times relevant to this action. Although there is some dispute as to whether she was performing at a satisfactory level, it is clear that Plaintiff was highly recommended to the Defendant and that she had considerable experience as a manager/director of a body shop. Thus, there is a genuine issue of material fact as to satisfactory performance and the Court will regard the second requirement as satisfied for purposes of this motion. Plaintiff also has satisfied the third requirement because she was not hired on a permanent basis. It is the fourth requirement that Plaintiff cannot satisfy.

An ADEA claim requires that a plaintiff demonstrate that he was treated less favorably than younger, similarly situated employees. *Schuster*, 327 F.3d at 574. Plaintiff urges the Court to compare her to Richard Satzke, who was a former AutoNation employee hired as a permanent employee after the thirty day retention period and who eventually succeeded Tom Mazzone as the general manager of the Woodfield facility after several months. The Plaintiff's claim makes no sense. She signed a document entitled "Temporary/ Contract Worker Form" in which the

general description of duties listed only "General Manager Woodfield Shop." Satzke did not become the general manager of the Woodfield facility until July 2004, a minimum of eight months after the Plaintiff was passed over for the permanent position. The Plaintiff states in her response to Defendant's motion for summary judgment that she did not apply for any specific position, she merely expressed a desire to continue as *a manager*. (¶¶ 41-42). However, she unambiguously states that the Defendant hired Satzke, "a younger less experienced person to manage the facility" and that is the basis of her demonstration of a similarly-situated employee. (*Id.*) Comparing the Plaintiff to Satzke is clearly not correct for this analysis. The evidence shows that after deciding not to hire the Plaintiff as the general manager of the facility, the Defendant hired Tom Mazzone to do so. Mazzone managed the facility from October 2003, when Plaintiff was passed over, until July 2004, when Satzke was promoted. Richard Satzke is entirely irrelevant to the analysis because he was not similarly-situated to the Plaintiff for purposes of the *general manager position*. Therefore, if this Court compares Plaintiff to Satzke, then she cannot possibly satisfy the fourth requirement of the *prima facie* claim.[3]

Should the Court compare the Plaintiff with Mazzone as the similarly-situated employee, she still would not satisfy the fourth requirement of the *prima facie* ADEA claim. Under the Seventh Circuit case law, a similarly-situated employee must be at least ten years younger than the plaintiff to satisfy the "substantially younger" requirement. *Radue v. Kimberly-Clark Corp.*,

---

[3] Furthermore, Plaintiff concedes in her deposition testimony that when Defendant took over the Woodfield facility, Satzke was an estimator not a manager. *See* Williams Transcript, pp. 101-102. His application for employment, which the Plaintiff submitted to the Court, clearly shows that he was applying for the position of estimator. So whether Plaintiff sought the position of general manager or manager, Satzke is not the proper party to whom the Plaintiff should be compared.

219 F.3d 612, 619 (7th Cir. 2000); *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997). Mazzone is only eight and one-half years younger that the Plaintiff. However, if an ADEA plaintiff cannot show at least a ten year disparity in age, then the plaintiff may still demonstrate a triable claim of age discrimination if he can direct the court to evidence that his employer considered his age to be significant. *Hartley*, 219 F.3d at 619. Here, the Plaintiff has not presented any evidence that the Defendant considered her age to be significant or even at issue. This Court therefore finds that the Plaintiff has failed to completely satisfy the requirements of a *prima facie* ADEA claim and grants the Defendant summary judgment on Count III of the Complaint.

**C. Gender Discrimination**

Plaintiff also claims that the Defendant violated Title VII by discriminating against her on account of her gender by passing her over for the permanent position of manager of the Woodfield facility in favor of a man. She again proceeds under the *McDonnell Douglas* burden-shifting method to frame her claim. To establish a *prima facie* Title VII claim under *McDonnell Douglas*, a plaintiff must show that she 1) is a member of a protected class under Title VII, 2) applied for, and was qualified for, an open position, 3) was rejected, and that 4) the employer filled the position with a person not in the plaintiff's protected class or the position remained open. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450 (7th Cir. 1999). Women are a protected class under Title VII and the Plaintiff is a woman. There is no serious question that the Plaintiff was qualified for the position of manager of the Woodfield facility. Yet she states that she did not apply for any specific position, she merely expressed an interest in continuing as a manager. The Court will assume that the Plaintiff has satisfied the second requirement of the *prima facie*

showing for purposes of this motion because the evidence shows that the Defendant clearly considered Plaintiff for the position of general manager of the Woodfield facility. The Defendant subsequently declined to hire her as the permanent general manager of the facility. Lastly, the Defendant filled the position of general manager of the facility with a man, Tom Mazzone. Plaintiff has therefore satisfied the requirements of the *prima facie* claim for gender discrimination under Title VII.

However, that is not the end of the analysis; even under the added rigor of a summary judgment analysis. *See e.g. Sarsha v. Sears Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). Upon a plaintiff satisfying the *prima facie* requirements, a defendant can still prevail on summary judgment if he offers a legitimate, nondiscriminatory reason for the adverse employment action and the plaintiff cannot produce any genuine issues of material fact evincing that the defendant's legitimate, nondiscriminatory reason is pretextual. *Sullivan v. Village of McFarland*, No. 06-3231, slip copy, 2007 WL 1315622 at *2, (7th Cir. May 7, 2007) (citing *Brewer v. Bd. of Tr. of Univ. of Illinois*, 479 F.3d 908, 915 (7th Cir. 2007)). A defendant need only articulate a legitimate, nondiscriminatory reason; the plaintiff bears the burden of casting doubt on the credibility of the reason. *Mills*, 174 F.3d at 454 (citing *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1993). Furthermore, demonstrating pretext requires that the plaintiff present evidence showing that the stated reason for the adverse employment action is dishonest or false; not merely, ill-conceived, foolish or mistaken. *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (citations omitted).

Here, the Defendant offers a legitimate, nondiscriminatory reason for deciding not to hire Plaintiff as the manager of the Woodfield facility. The Defendant told the Plaintiff that she had a

different management style and philosophy. Amy Mieding, Defendant's human resources manager, met with Plaintiff personally to convey Defendant's decision which was made by Todd O'Day. Defendants also submit evidence that the Plaintiff earned approximately $120,000 per year in total compensation at the time Defendant purchased the facility. Tom Mazzone, who became the manager of the facility, earned a salary of $65,000 per year at the time. He had already been a manager of another facility owned by the Defendant prior to becoming the general manager of the Woodfield facility.

The Defendant never spoke to Plaintiff about management style or philosophy (other than Mieding when she explained why the Plaintiff was being passed over as manager). The Plaintiff has also shown that O'Day's affidavit is unreliable. First, O'Day offers "facts" that clearly rely on unsubstantiated hearsay statements made by other people throughout his affidavit. Second, it is possible that he was also dishonest in his affidavit. O'Day stated that he personally saw and heard the Plaintiff berate a co-worker, Satzke, at the Woodfield facility in front of customers. He cites this occurrence as an example of the Plaintiff's conduct that was not in accordance with the Defendant's management style. Immediately following the paragraph where he swears he saw and heard this incident, O'Day states that it appeared the incident grew out of the Plaintiff's anger that Satzke had not returned a phone call. He also states that she refused to listen to Satzke's explanation. The Plaintiff responds that this incident never occurred. She directs the Court to a letter sent by the Defendant to the Illinois Department of Human Rights (IDHR) responding to the Plaintiff's charges of discrimination. In that letter, Mieding, the Defendant's human resources manager, wrote that Shelly Bernhard witnessed the incident between Satzke

-16-

and the Plaintiff.[4] There is no mention of O'Day witnessing the Plaintiff berate anyone in the letter. In addition to her own affidavit, the Plaintiff offers an affidavit of Joanne Lazarsky that does not state whether O'Day was present or not, but does state that the Plaintiff was merely diffusing a heated argument between Satzke and Lazarsky through polite admonishment. There may be a plausible reason as to why the Meiding letter to the IDHR would omit O'Day's observations if he really was there to watch Plaintiff's conduct. However, the Defendant has not offered one, and this Court is of the opinion that the matter would not be properly resolved on a motion for summary judgment.

In short, by demonstrating that a key piece of the Defendant's evidence may be unreliable and possibly false, the Plaintiff has presented enough evidence to show a genuine issue of material fact as to whether the Defendant's legitimate, nondiscriminatory reason is pretext. Therefore, this Court **DENIES** the Defendant's motion for summary judgment as to Count II of the Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to Counts I and III of the Complaint and **DENIED** as to Count II.

                          Enter:

                          /s/ David H. Coar
                          David H. Coar
                          United States District Judge

Dated: **July 09, 2007**

---

[4] This letter is not hearsay. See Fed. R. Evid. 801.